IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MICHAEL ALBERT, | CV 17-00069-H-DLC-JTJ |
| Plaintiff, | |
| vs. | |
| MONTANA DEPARTMENT OF CORRECTIONS, REGINALD D. MICHAEL, MISSOULA COUNTY, CORRECTIONAL HEALTH PARTNERS, PAUL REES, HEIDI ABBOTT, MELISSA SCHARF, ALLY CARL, TRISTAN KOHUT, CONNIE WINNER, KIMBERLY FISK, JORDEN MCDONALD, ALVIN FODE, JIM SALMONSEN, STEVEN WEBER, MIKE HERBERT, PATRICK MARTIN, STEVE KREMER, RUSS DANAHER, LEROY KIRKEGARD, ABBY MARTIN, and LESLIE THORNTON,[1] | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| Defendants. | |

This matter comes before the Court on Defendant Missoula County's

Motion to Dismiss (Doc. 36) and Defendants Montana Department of Corrections,

Michael, Rees, Abbott, Scharf, Carl, Kohut, Winner, Fisk, McDonald, Fode,

_____

[1]The case style has been amended to reflect the Defendants named in the Amended Complaint (Doc. 26).

1

Salmonsen, Weber, Herbert, Martin P., Kremer, Danaher, Kirkegard, Martin, A.,
and Thornton (collectively "State Defendants")'s Motion to Dismiss (Doc. 50).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of
a cognizable legal theory or the absence of sufficient facts alleged under a
cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699
(9th Cir. 1990). A plaintiff's complaint must allege sufficient facts to state a claim
for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
A claim has "facial plausibility" when the party seeking relief "pleads factual
content that allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Id.* Although the court must accept as true the
plaintiff's well-pled facts, conclusory allegations of law and unwarranted
inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss.
*Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v.
Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more
than labels and conclusions, and a formulaic recitation of the elements of a cause
of action will not do. Factual allegations must be enough to raise a right to relief
above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
(citations and footnotes omitted). This requires a plaintiff to plead "more than an

unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. 544).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).  However, where the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend.  *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

## I.  MISSOULA COUNTY'S MOTION TO DISMISS

In his First Amended Complaint, Mr. Albert alleged he was arrested on July 2, 2015 on a probation violation and taken to the Missoula County Detention Facility ("MCDF").  (Amd. Cmplt., Doc. 26 at ¶ 34.)  At the time of his arrest, Mr. Albert had an infection (osteomyelitis) in his amputated leg stump which was recorded by MCDF medical staff.  (Amd. Cmplt., Doc. 26 at ¶ 35.)  Mr. Albert alleges he was not placed in a cell that could accommodate a person with an amputated leg and that the County and CHP failed to treat his infection or the resulting pain and suffering for two months while he was held at MCDF. (Amd. Cmplt., Doc. 26 at ¶¶ 37, 142.)  He contends that eventually the infection caused

him to be taken to the emergency room in Missoula.  (Amd. Cmplt., Doc. 26 at ¶ 37.)  Mr. Albert alleges the County acknowledged that he needed surgery to remedy the infection in the amputated leg but he could not be treated at MCDF.  (Amd. Cmplt., Doc. 26 at ¶ 38.)  He continued to have severe pain, swelling, and discharge from the wound.  (Amd. Cmplt., Doc. 26 at 39.)  Mr. Albert's suspended sentence was revoked in September, 2015 and he was transferred to Montana State Prison.  (Amd. Cmplt., Doc. 26 at ¶ 39.)

Missoula County contends that Mr. Albert's claims in Counts:  I (§1983 inadequate medical care claim); II (§1983 deliberate indifference to safety claim); IV (Americans with Disabilities Act ("ADA") claim); V (Rehabilitation Act claim); Count VI (negligence); VII (negligence per se); VIII (Mont. Const. cruel and unusual punishment claim); IX (Mont. Const. Right to individual dignity claim); and X (medical malpractice) fail to meet the federal pleading requirements. Mr. Albert concedes in the dismissal of Count IX.  (Response, Doc. 39 at 14.)

## A.  1983 Claims (Counts I and II)

Mr. Albert raised two Section 1983 claims against Missoula County:

Paragraph 100. Missoula County and Correctional Health Partners, deliberately through their policies and procedures, allowed their employees or agents to deliberately deprive the Plaintiff of his constitutional rights and subject him to cruel and unusual punishment by depriving him of needed medical care and attention.

4

Paragraph 122.  Missoula County and Correctional Health Partners, deliberately through their policies and procedures, allowed their employees or agents to deliberately deprive the Plaintiff of his constitutional rights and subject him to cruel and unusual punishment by depriving him of his safety.

(Amd. Cmplt., Doc. 26 at 17, 21.)

A municipal entity, such as Missoula County, cannot be held liable on a respondeat superior theory, or on the theory that it is responsible for the actions of its employees. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, to impose municipal liability under Section 1983 for a violation of constitutional rights, a plaintiff must show:  (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).

*Monell* allegations must be pleaded with specificity as required under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Thus, in order survive a motion to dismiss a *Monell* claim, a plaintiff must adhere

to two principles:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subject to the expense of discovery and continued litigation.

*AE ex rel. Hernandez*, 666 F.3d at 637 *citing Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "[A] bare allegation that government officials' conduct conformed to some unidentified government policy or custom" is insufficient.  *AE ex rel. Hernandez*, 666 F.3d at 637 (internal quotation marks omitted) (*quoting Starr*, 652 F.3d at 1216).  A plaintiff must allege sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow defendants to effectively defend themselves and these facts must plausibly suggest that the plaintiff is entitled to relief.  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996) (as amended); *see also Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two

incidents insufficient to support a finding of liability).

Here, Mr. Albert's allegations fail to give rise to any plausible inference sufficient to support a *Monell* claim against the County.  Mr. Albert does not identify any specific policy or custom of the County, any specific regulations, or any officially adopted or promulgated decisions, the execution of which allegedly led to a constitutional violation.  He has not alleged sufficient facts regarding the specific nature of the alleged policy, custom, or practice to allow the County to effectively defend itself nor has he set forth sufficient facts to plausibly suggest he is entitled to relief.  The vague and conclusory allegations fall far short of pleading a viable *Monell* claim.

The County's Motion to Dismiss should be granted with regard to Mr. Albert's § 1983 claims raised in Counts I and II against the County.

## B. Americans with Disabilities Act and Rehabilitation Act Claims

In the First Amended Complaint, Mr. Albert alleged Missoula County failed in its responsibilities under Title II of the ADA to provide services, programs, and activities in a full and equal manner to disabled persons, including failing to provide an ADA compliant cell.  (Amd. Cmplt., Doc. 26 at 26-27, ¶ 142.) Similarly, he alleged the County administers a program or activity that receives federal financial assistance and discriminated against disabled prisoners by failing

to provide reasonable accommodations for their disabilities; discriminated against

disabled prisoners solely on the basis of their disabilities; and failed to provide

adequate accommodations for disabled prisoners in violation of § 504 of the

Rehabilitation Act.  (Amd. Cmplt., Doc. 26 at 26-27, ¶¶ 154-157.)

>     Title II of the ADA provides:
>
>     Subject to the provisions of this subchapter, no qualified individual
>     with a disability shall, by reason of such disability, be excluded from
>     participation in or be denied the benefits of the services, programs, or
>     activities of a public entity, or be subjected to discrimination by any
>     such entity.

42 U.S.C. § 12132.  Similarly, the Rehabilitation Act provides:

>     No otherwise qualified individual with a disability in the United
>     States . . . shall, solely by reason of her or his disability, be excluded
>     from the participation in, be denied the benefits of, or be subjected to
>     discrimination under any program or activity receiving Federal
>     financial assistance . . .

29 U.S.C. § 794(a).  Title II of the ADA and Section 504 of the Rehabilitation Act

both prohibit discrimination on the basis of disability.  The ADA applies only to

public entities, whereas the Rehabilitation Act proscribes discrimination in all

federally-funded programs.  *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002).

Both Acts apply to state prisons.  *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th

Cir. 1997).

>     To establish a violation of Title II of the ADA, a plaintiff must show that (1)

he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of his disability. *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Similarly, to establish a violation of Section 504 of the Rehabilitation Act, a plaintiff must show that (1) he is an individual with a disability; (2) he is otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services solely by reason of his handicap; and (4) the program providing the benefit or services receives federal financial assistance. *Id.* Because Title II of the ADA was modeled on Section 504, "courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) (citations omitted); *see also* 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [Section 504] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination in violation of [Section 12132 of this title].").

Although the ADA does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the

modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).  The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under the ADA arises only when a policy, practice or procedure discriminates on the basis of disability.  *Weinreich*, 114 F.3d at 979.  A plaintiff accordingly bears the burden of establishing the existence of specific reasonable accommodations that the defendant public entity failed to provide.  *Id*. at 978.

Mr. Albert's First Amended Complaint adequately alleges that he has a disability and that Missoula County is a public entity.  The more difficult questions concern whether he sufficiently alleged that he was excluded from participation in or denied benefits of services, programs, or activities of the detention facility or subjected to discrimination by the detention facility, and if so whether he has been denied reasonable accommodations.

Mr. Albert's makes conclusory allegations that Missoula County "failed in their responsibilities under Title II to provide their services, programs, and activities in a full and equal manner to disabled persons as described hereinabove, including failing to provide an ADA compliant cell."  (Amended Complaint, Doc.

10

26 at 24-25, ¶ 142.)  The only specific factual allegation, however, is that he was

detained in a non-ADA accessible cell.  This alone is insufficient to sustain a

claim under the ADA or the Rehabilitation Act.  Mr. Albert does not allege how

being detained in a non-ADA accessible cell excluded him from participation in or

caused him to be denied benefits of services, programs, or activities of the prison

or subjected him to discrimination by the prison.  Further, there is no allegation

that he requested and was denied alternative accommodations, or any other facts to

demonstrate that defendants were "more than likely motivated" by a

discriminatory reason, or that they even knew Mr. Albert required a different cell.

Because of these omissions, Mr. Albert has not sufficiently stated a claim for relief

under the ADA or the Rehabilitation Act for which relief may be granted.

 The County's Motion to Dismiss Mr. Albert's ADA and Rehabilitation Act

claims raised in Counts IV and V should be granted.

### C.  State Law Claims

#### 1.    Count VI and VII: Negligence and Negligence per se

 Under Montana law, four elements are required to prove a claim for

negligence:  (1) duty; (2) breach of duty; (3) causation; and (4) damages.  *Dulaney*

*v. State Farm Fire & Cas. Ins. Co*., 2014 MT 127, ¶ 10, 375 Mont. 117, 120, 324

P.3d 1211, 1214.  Clearly the County owed a duty of care to prisoners in its

custody.  *See Matter of J.J.*, 2018 MT 184, ¶ 19, 392 Mont. 192, 197, 422 P.3d

699, 704 (*citing Paull v. Park Cnty.*, 2009 MT 321, ¶ 33, 352 Mont. 465, 218 P.3d

1198).  Mr. Albert alleges the County breached that duty by failing to provide him

with adequate medical treatment causing him damages.  This is sufficient to allege

a negligence claim and the County's motion should be denied as to Count VI.

Mr. Albert bases his negligence per se claims upon alleged violations of the

ADA and the Rehabilitation Act.  As the Court has determined that Mr. Albert has

not sufficiently alleged any such claims, the County's motion to dismiss the

negligence per se claim should be granted.

### 2.      Counts VIII:  Montana Constitution Claims

A prisoner in Montana has the right to adequate medical care.  *Wilson v.

State*, 2010 MT 278, ¶ 28, 358 Mont. 438, 249 P.3d 28.  This right is violated

when a Defendant is deliberately indifferent to the medical needs of a detainee.

*Walker v. State*, 2003 MT 134, ¶¶ 55-56, 316 Mont. 103, 68 P.3d 872.  Mr. Albert

has alleged that he suffered from a serious medical need and the County was

deliberately indifferent to that need.  The motion to dismiss this claim, therefore,

should be denied as to Count VIII.

### 3.      Count X: Medical Malpractice

Missoula County argues that it cannot be held liable for medical malpractice

under Montana law because it is not a "health care provider."  The Court agrees.

Mont. Code Ann defines a malpractice claim as:

> a claim or potential claim of a claimant against a health care provider for medical or dental treatment, lack of medical or dental treatment, or other alleged departure from accepted standards of health care that proximately results in damage to the claimant, whether the claimant's claim or potential claim sounds in tort or contract, and includes but is not limited to allegations of battery or wrongful death.

Mont. Code Ann. § 27-6-103(5).  A health care provider is defined as "a physician, a dentist, a podiatrist, or a health care facility."  Mont. Code Ann. § 27-6-103(3).  Missoula County is not a health care facility as defined by Montana law.  As such, Mr. Albert's medical malpractice claim raised in Count X should be dismissed.

## II.  STATE DEFENDANTS' MOTION TO DISMISS

The State Defendants move to dismiss:  (1) all § 1983 claims (Counts I-III) against the supervisory defendants Michael, Kirkegard, and Salmonsen; (2) the administrative defendants from the ADA and Rehabilitation Act claims (Counts IV through and V); (3) all individually named State Defendants from any remaining state law claims (Counts VI through X) and substitute "State of Montana" such that the only remaining Defendant in any state law claims is the State of Montana; (4) the Montana State Constitutional Claims (Count VIII and

Count IX) entirely; (5) either Count VI (Negligence) or Count X (Medical Malpractice) as duplicative.

Mr. Albert made the following concessions:  (1) dismiss Defendants Michael and Kirkegard from the §1983 claims (Counts I through III); (2) dismiss Defendant Salmonsen from Counts II and III but not Count I; (3) dismiss the administrative defendants from the ADA and Rehabilitation Act claims (Counts IV and V); (4) dismiss all individually named State Defendants from the remaining state law claims (Counts VI through X) and substitute the "State of Montana" as the only remaining Defendant in the state law claims; (5) dismiss the Montana State Constitutional right to individual dignity claim in Count IX; and (6) dismiss Count XI as a separate count but keep the request for punitive damages.

As such, the Court will address:  Mr. Albert's § 1983 claim against Defendant Salmonsen; the Montana State Constitutional cruel and unusual punishment claim raised in Count VIII; and whether Counts VI (Negligence) and X (Medical Malpractice) are duplicative.

**A. § 1983 Claims against Defendant Salmonsen**

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

"[A] plaintiff may state a claim against a supervisor for deliberate indifference

based upon the supervisor's knowledge of and acquiescence in unconstitutional

conduct by his or her subordinates." *Starr*, 652 F.3d 1202.  Section 1983 will not

impose liability on supervising officers under a respondeat superior theory of

liability.  *Monell*, 436 U.S. at 691-94.  That is, a defendant cannot be held liable

just because they supervise other employees.  Instead, supervising officers can be

held liable under § 1983 "only if they play an affirmative part in the alleged

deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.

1987).

The Ninth Circuit has identified four general situations in which supervisory

liability may be imposed:  (1) for setting in motion a series of acts by others, or

knowingly refusing to terminate a series of acts by others, which they knew or

reasonably should have known would cause others to inflict constitutional injury;

(2) for culpable action or inaction in training, supervision, or control of

subordinates; (3) for acquiescence in the constitutional deprivation by

subordinates; or (4) for conduct that shows a reckless or callous indifference to the

rights of others. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

Mr. Albert alleges that, on February 3, 2017, he made "more desperate

requests for his medical supplies, heart medication, and pain medication, to Ally

Carl, Associate Warden Jim Salmonsen, and Sergeant Steven Weber.  They

assured the Plaintiff he would get them but he never received them."  (Amd.

Cmplt., Doc. 26 at ¶ 62.)  He also alleges, that Defendant Salmonsen was:

> aware of the Plaintiff's medical condition and need for his high blood
> pressure medication. Salmonsen and Weber deliberately deprived the
> Plaintiff of his medication and requested supplies while he was in
> MAX on or around February 3, 2017. The Plaintiff then suffered a
> massive heart incident the following day due to deprivation of high
> blood pressure medication.  He also developed another Infection sore
> on his amputated leg.

(Amd. Cmplt., Doc. 26 at ¶ 113.)

Mr. Albert seems to allege both individual acts by Defendant Salmonsen

and/or that Defendant Salmonsen acquiesced in the alleged denial of medical

treatment by subordinates.  This is sufficient to state a claim for personal liability

against Defendant Salmonsen.  The motion to dismiss Defendant Salmonsen

should be denied.

### B.  Montana State Constitutional Cruel and Unusual Punishment Claim

Mr. Albert alleges in Count VIII that:

> Defendants inflicted cruel and unusual punishment on the Plaintiff
> when they forced him to endure extreme pain without taking adequate
> corrective measures, depriving him of necessary medication and
> medical supplies that resulted in exacerbated medical issues and a
> massive heart incident on February 4, 2017, which led to open heart

16

surgery, and for failing to provide reasonable disability
accommodations.

(Amd. Cmplt., Doc. 26 at 29, ¶ 176.)

Defendants argue Mr. Albert's claims for violations of the Montana
Constitution should be entirely dismissed because Montana law provides that
where existing statutory or common law provide an adequate remedy for the
claimed harm, the plaintiff cannot reframe the cause as a claim for relief under the
Montana Constitution.  (State's Brief, Doc. 51 at 20 citing *Sunburst Sch. Dist. No.
2 v. Texaco, Inc.*, 2007 MT 183, ¶ 64, 338 Mont. 259, 165 P.3d 1079; *Shammel v.
Canyon Resources Corp.*, 2007 MT 206, ¶ 10, 338 Mont. 541, 167 P3d 886; *The
Northern Cheyenne Tribe v. The Roman Catholic Church*, 2013 MT 24, ¶ 59, 368
Mont. 330, 296 P.3d 450; *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch,
LLC*, 2010 MT 63, ¶¶47-50, 355 Mont. 387, 228 P.3d 1134).  Defendants argue
that since Mr. Albert's claims of negligence, negligence per se, or "medical
malpractice" provide adequate remedies for the claimed injury, his Montana
constitutional claim under Count VIII should be dismissed.

The Court disagrees for several reasons.  First, the cases cited by the State
address whether a constitutional claim exists in actions brought against private
parties.  The Montana Supreme Court in *Dorwart v. Caraway*, 2002 MT 240, 312

17

Mont. 1, 58 P.3d 128 made a distinction between constitutional actions against

private parties versus actions against government actors.  The Court in *Dorwart*

specifically recognized that,

> there is a great distinction between wrongs committed by one private
> individual against another and wrongs committed under authority of
> the state.  Common law causes of action intended to regulate
> relationships among and between individuals are not adequate to
> redress the type of damage caused by the invasion of constitutional
> rights.

*Dorwart*, ¶ 46.  Here Mr. Albert is seeking to bring state constitutional claims

against the State, not private individuals.

Secondly, as Mr. Albert argues and as Judge Christensen recently held,

dismissal of constitutional claims on this basis is, at best–premature.  *Brothers v.*

*Monaco*, 2019 WL 343304 (January 28, 2019).  In *Brothers*, Judge Christensen

recognized that it is not uncommon to plead claims in the alternative.  He further

explained that the *Dorwart* plaintiff had brought common-law trespass and

conversion claims as well as state constitutional claims.  The common-law claims

were dismissed on summary judgment but the plaintiff's constitutional

claims—for violation of his state constitutional rights to due process, privacy, and

to be free from unreasonable searches and seizures—survived summary judgment.

*Brothers*, 2019 WL 343304 at *9, 10 citing *Dorwart*, 58 P.3d at 133–37.  Judge

18

Christensen acknowledged that the Montana Supreme Court has expressed a reluctance to address novel constitutional questions but has not adopted a "hard-and-fast rule disallowing constitutional claims arising from facts that may possibly give rise to a viable statutory or common-law claim." *Brothers*, at *10. None of the cases cited by the State indicate such a bright line rule in Montana.

In *Peschel v. City of Missoula*, 664 F.Supp.2d 1149 (2009), United States Magistrate Judge Lynch also disagreed with the State's argument.  Judge Lynch found that the Montana Supreme Court in *Dorwart* "actually rejected the argument that the availability of other adequate remedies precludes claims under the Montana Constitution." *Id*. at 1160.  Judge Lynch also found that the Montana Supreme Court's ruling in *Sunburst School District No. 2 v. Texaco, Inc.*, 2007 MT 183, 338 Mont. 259, 165 P.3d 1079, did "not preclude constitutional claims merely because other remedies are available." *Id.*

The State's motion on this issue should be denied.

**C.  Counts VI (negligence) and X (medical malpractice)**

Defendants argue that either Count VI (negligence) or Count X (medical malpractice) should be dismissed as duplicative.  The Court should decline to do so.  "A pleading that states a claim for relief must contain . . . a demand for relief sought, which may include relief in the alternative or different types of relief."

19

Fed. R. Civ. P. 8(a)(3).   At this early stage in the proceedings, it is unnecessary to dismiss claims seeking alternative theories of relief.

### D.  Punitive Damages

Mr. Albert concedes that punitive damages cannot be a sole cause of action. (Doc. 52 at 9.)  Accordingly, the Court should grant the State's motion with regard to Count X–Punitive Damages.  The Court should, however, decline to determine at this stage whether Mr. Albert may seek punitive damages as a form of relief.

Based on the foregoing, the Court issues the following:

### ORDER

1.  The parties shall appear before the undersigned on **April 24, 2019 at 3:00 p.m. at the Missouri River Federal Courthouse, 125 Central Avenue West, Great Falls, Montana**, for the purpose of participating in a preliminary pretrial conference ("conference").  The parties should report to the chambers of the undersigned for the conference.

     a.  If it is impossible for a party to attend the conference at the time set, application for an extension must be made by motion.  The motion must state whether opposing party objects.  The motion also must be accompanied by a proposed order resetting the conference.  Requests to change the conference date will be granted for good cause shown.

     b.  **The Court will entertain a motion to attend the preliminary pretrial conference by telephone.**

     2.  The conference is intended to develop a case-specific plan for discovery and a schedule for disposition of the case.  The parties should be prepared to take part in meaningful discussions of material contained in the pretrial statements. Each party to the case must be represented at the conference by at least one person with authority to enter stipulations.  The case management plan, including trial date resulting from the conference, will not be subject to revisions absent compelling reasons.

     3.  Any party may commence discovery immediately upon providing the Rule 26(a)(1) Initial Disclosure to all opposing parties.  Fed. R. Civ. P. 26(d).

     4.  On or before **April 10, 2019**, the parties shall meet and confer to consider matters listed in Fed. R. Civ. P. 26(f).

     5.  On or before **April 17, 2019**, the parties shall jointly file with the Court a written report outlining the discovery plan formulated at the conference.  The discovery plan will require disclosure of all experts and shall address whether expert disclosures will be made simultaneously or sequentially.  Expert disclosures must comply with Fed. R. Civ. P. 26(a)(2)(B).  As part of the discovery plan parties shall seek to identify and should be prepared to discuss in detail any

electronic discovery stipulations or issues which may arise and a plan for electronic discovery.  Fed R. Civ. P. 26(f)(3).  In that regard the parties may find it useful to consider potential issues regarding electronic discovery such as those outlined in the Delaware Default Standard for Discovery of Electronically Stored Information ("E-Discovery") found at:

http://www.ded.uscourts.gov/sites/default/files/Chambers/SLR/Misc/EDiscov.pdf

6.  On or before **April 17, 2019**, the parties shall file a preliminary pretrial statement.  *See* Fed. R. Civ. P. 26(a)(1).  The statement shall address all matters listed in Federal Rule 26(a)(1) and all matters listed in Local Rules 16.2(b)(1), 16.2(c), and 26.1.

7.  On or before **April 17, 2019**, the parties shall file a Statement of Stipulated Facts.  *See* Local Rule 16.2(b)(3).

8.  The Clerk of Court shall provide the parties with the appropriate forms to indicate whether or not they consent to the exercise of jurisdiction by a United States Magistrate Judge.

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Missoula County's Motion to Dismiss (Doc. 36) should be GRANTED IN PART in that:

22

a.  Mr. Albert's Section 1983 *Monell* claims against Missoula County, ADA claim, Rehabilitation Act claim, negligence per se claim, and Montana Constitutional claim of right to individual dignity s alleged in Counts I, II, IV, V, VII, and IX should be DISMISSED WITHOUT PREJUDICE.

b.  Mr. Albert's medical malpractice claim against Missoula County alleged in Count X should be DISMISSED WITH PREJUDICE.

The County's Motion should be DENIED as to Mr. Albert's negligence claim raised in Count VI and Montana State Constitutional cruel and unusual punishment claim raised in Count VIII.

2.  The State Defendants' Motion to Dismiss (Doc. 50) should be GRANTED IN PART in that:

a.  Defendants Michael and Kirkegard should be DISMISSED from the §1983 claims alleged in Counts I, II, and III;

b.  Defendant Salmonsen should be DISMISSED from the § 1983 claims alleged in Counts II and III;

c.  Defendants Montana Department of Corrections, Reginald D. Michael, employees or agents of MSP and the Montana Department of Corrections, Wardens Jim Salmonsen and Leroy Kirkegard should be dismissed from Counts IV and V and the State of Montana should be substituted as the sole

Defendant in Counts IV and V;

      d.  All individually named State Defendants should be DISMISSED WITH PREJUDICE from the state law claims in Counts VI through X and the State of Montana should be SUBSTITUTED in their place;

      e.  Mr. Albert's Montana State Constitutional right to individual dignity claim in Count IX should be DISMISSED; and

      f.  Count XI should be DISMISSED as a separate count but Mr. Albert should be allowed to seek punitive damages as a form of relief.

The State Defendants' Motion should be DENIED as to Mr. Albert's claim against Defendant Salmonsen in Count I, Mr. Albert's negligence and medical malpractice claims, and Mr. Albert's Montana State Constitution cruel and unusual punishment claim in Count VIII.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within 14 days after service hereof.  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

until entry of the District Court's final judgment.

      DATED this 14th day of March, 2019.


                         *\_\_\_ /s/ John Johnston _____*
                         John Johnston
                         United States Magistrate Judge